# EXHIBIT 1



A member of the Crum & Forster Enterprise

# Producer - Company Agreement

☑ United States Fire Insurance Company    ☑ The North River Insurance Company
☑ Crum & Forster Indemnity Company        ☐ Crum and Forster Insurance Company

Each of the companies designated above, as now or hereafter constituted, its successors or assigns, is a party to this Agreement and is herein severally, but not jointly, referred to as the "Company".

C&D Insurance & Bonds, Inc.
_____
Name of the Producer

1163 Natures Hammock Road N., St. Johns, FL 32259
_____
Address

is a party to this Agreement and is herein called the "Producer".

This Agreement also covers the following locations of the Producer (if listed below):


It is agreed between the Company and the Producer as follows:

_____

## I.   Duties and Responsibilities of Producer

Subject to requirements imposed by law, the terms of this Agreement and the underwriting policies, rules and guidelines of the Company, the Producer is authorized or obliged to, as appropriate to:

A.  Solicit, receive and send to the Company proposals for commercial lines insurance contracts. The Producer is not authorized to (1) bind coverage for the Company on any policy or endorsement, including any additional insured endorsement, or (2) make, alter, vary or discharge any policy or endorsement without the prior written authorization from Company.

B.  Collect, account, receipt for and pay premiums due the Company on business which is bound by the Company. As full compensation, the Producer will retain commissions out of the collected premiums at the rate designated on individual policies. The Producer agrees to keep accurate records of all business transacted under this Agreement.  The Company, or its authorized designee, shall have access to and have the right to examine and audit the Producer's books and records relating to this Agreement upon reasonable notice to the Producer.

C.  Promptly refund all commissions, including any portion paid to, shared with, or retained by any other producer, broker or agent, on policy cancellations or premium reductions or returns at the same rate at which such commissions were originally paid or retained.  If commission is paid on a flat fee basis, unearned commission must be returned in the same ratio as the unearned portion of the estimated policy premium bears to the estimated policy premium. The Producer agrees that all premiums, including return premiums received by the Producer or received by any other producer, broker or agent recognized by Producer to receive such premiums, are the

property of the Company, the Producer is liable for them, and the Company has the right to exercise direction and control over them.

D. Issue certificates of insurance providing evidence of the insurance issued by Company after the Company has confirmed to Producer in writing that such coverage has been bound. Producer shall not provide any information in the certificate of insurance that is not entirely consistent with the terms of the insurance, and Producer is prohibited from issuing any certificate that includes any representation that any person or entity is an additional insured under the insurance without the prior written consent from Company, unless the Company has already issued an additional insured endorsement, in which case Producer may identify the person or entity as an additional insured subject to the terms of the additional insured endorsement.

E. Hold all funds the Producer collects or receives on Company's behalf in a fiduciary capacity. Producer shall maintain all policy premiums in a separate bank account and not co-mingle them with the Producer's own funds, unless permitted by the insurance laws of the state in which the Producer is domiciled. Until the Company receives the funds, Producer is responsible for their safety and bears the risk of loss. The funds may be placed in an interest bearing account until due to the Company. Unless the Producer has breached an obligation under this Agreement, all interest earned in the account is the Producer's property.

F. Comply with all applicable laws and regulations including, but not limited to, the cancellation, nonrenewal, or conditional renewal of policies, as well as all other laws governing the conduct of the Producer's business.

G. Warrant and represent that the Producer is duly and properly licensed in all jurisdictions for which Producer will submit applications for insurance to the Company. Producer shall provide Company with a copy of the current insurance licenses maintained by Producer upon request.

H. Maintain at all times this Agreement is in effect, and for a period of three (3) years thereafter, agents/brokers professional liability insurance with minimum limits of one million ($1,000,000) per claim and in the aggregate; and furnish a copy of the declarations page or certificate upon request by the Company.

## II. Premium Accounting

With respect to business billed by statement, the following provisions apply:

A. Itemized statements of money due are prepared by the Company and delivered to the Producer within ten (10) calendar days after the end of each calendar month, referred to as the "billing month". The balance shown in the statement due the Company shall be paid by the Producer and received by the Company no later than forty-five (45) calendar days after the end of the billing month. The Company's omission of any item within a statement or the failure to comply with the delivery provision shall not prejudice Company's rights to collect any sums due.

B. Premium transactions issued by the Company will be entered in the itemized statement by the Company during the billing cycle in which the transaction is effective, and payment will be expected on the due date of the statement.

With respect to business subject to individual item billing by the Company, the following provisions apply:

C. An individual invoice is produced for each premium transaction and, unless otherwise agreed, may be issued to either the Producer or the insured. Settlement may be either on a gross premium or net premium basis. If the Company receives the settlement on a gross premium basis, commission owing shall be paid to the Producer thirty (30) calendar days after the end of the month in which such premiums are received and recorded by the Company.

D. For business underwritten by the Company's Risk Management Casualty Division: (1) settlement of the annual or deposit premium is to be made on or before the effective date of the policy; (2) installment premiums are due on the agreed due date; and (3) premium from endorsement activity or audits is due thirty (30) calendar days from the date billed.

E. For business underwritten by the Company's Management & Professional Services Division: (1) settlement of the annual premium is to be made no later than forty-five (45) calendar days after the effective date of the policy; and (2) premium from endorsement activity is due thirty (30) calendar days from the date billed.

F. For business written in Crum & Forster Specialty Insurance Company or produced by wholesalers, except as noted in item II. E., (1) settlement of the annual premium is to be made no later than thirty (30) calendar days after the effective date; and (2) premium from endorsement activity is due thirty (30) calendar days from the date billed; and (3) audit premiums are due forty-five (45) calendar days from the date billed.

With respect to items designated by the Company as direct billed, the following provisions apply:

G. The Producer is responsible to collect the deposit premium and forward it to the Company. The Company will assume responsibility for all other billing and collection, including installments and additional premiums developed by audit or endorsement. Any direct billed premium remitted to the Producer must be promptly forwarded to the Company.

H. Commissions on premiums paid on direct billed policies shall be paid to the Producer within thirty (30) days after the end of the month in which such premiums are due and actually received by the Company. Commissions on premiums paid by installments shall be paid to the Producer within thirty (30) days after the end of the month in which each installment payment is due and actually received by the Company. No commission is due or payable to the Producer on uncollected premiums or on items that are referred to outside agencies for collection.

The following provisions apply to all producers:

I. Subject to Paragraph K. below, Producer agrees to pay the Company all premiums, including any deposit, advance, endorsement, retrospectively rated, installment and additional premiums, written or earned, on policies bound under this Agreement, whether or not actually collected. Producer guarantees payment to Company of all such premiums. The Producer is also responsible to return to the Company any unearned commissions, including any portion paid to, shared with, or retained by any other producer, broker or agent. Producer guarantees the return to Company of all such unearned commissions. If the Producer fails to pay the premiums

due the Company or to return unearned commissions in accordance with the terms of this Agreement, the Producer is considered to be in default.

J. The Producer may, in its sole discretion, advance premiums on behalf of policyholders. The Producer accepts full responsibility for such premiums. No premium advances may be made with fiduciary funds held in trust for the Company.

K. If additional premiums develop by audit or under any reporting form, or premiums become payable on noncancelable bonds and cannot be collected by the Producer, the Company may attempt direct collection and the Producer will not be responsible for such premiums provided the Producer:

1. has made a reasonable effort to collect such premiums and has failed;

2. refers such items to the Company for collection within forty-five (45) calendar days of the Producer's receipt from the Company of billing for such items; and

3. fully cooperates with the Company in any such collection effort.

The Producer will not be paid commission on premiums collected by the Company.

L. If the Producer raises a dispute regarding the amount of any policy premium, and the Company agrees a good faith dispute exists, the Producer may delay the payment of only that portion which is contested. The Producer may not delay the payment without informing the Company in writing and obtaining the Company's written concurrence a good faith dispute exists. If the discrepancy has not been resolved within thirty (30) calendar days from the date reported, the unpaid balance must be paid to the Company or the Company may cancel the in force policy in accordance with the terms of the policy and applicable law. This provision does not limit the Company's right to cancel the policy at any time in accordance with the terms of the policy and applicable law.

M. If premium has been financed through a premium finance company ("PFC"), the Company may return any unearned premium due the PFC directly to the PFC. If the Company returns gross unearned premium, Producer shall immediately upon demand pay to Company, without offset or deduction, any unearned commissions, including any portion paid to, shared with, or retained by any other producer, broker or agent. If the Company pays net unearned premium to the PFC, Producer shall immediately upon demand pay to the PFC or to Company, at Company's direction, without offset or deduction, any unearned commissions, including any portion paid to, shared with, or retained by any other producer, broker or agent. If the Company returns unearned premiums to Producer, Producer shall immediately upon demand pay to the PFC any unearned premium due the PFC, together with unearned commissions, including any portion paid to, shared with, or retained by any other producer, broker or agent, due the premium finance company, without offset or deduction.

N. With respect to policies bound under this Agreement, the Producer shall immediately notify the Company in writing if Producer learns that an insured of the Company has ceased or will cease to do business for any reason, or has become or will become the subject of a voluntary or involuntary filing of a petition for Chapter 7, Chapter 11 or Chapter 13 Bankruptcy, or a voluntary or involuntary action in liquidation, insolvency, receivership, or assignment for the benefits of creditors. The Producer shall also immediately provide written notice to the Company if such

insured has failed to timely pay any premium due under the payment terms applicable to the policy.

## III. Policy Cancellation, Nonrenewal or Conditional Renewal

Subject to requirements imposed by law and compliance with the applicable provisions of the policy, the Company retains the right to amend, cancel, decline to renew, or conditionally renew any policy. The Producer agrees to cooperate with and assist the Company in the exercise of such rights by the Company. The Producer remains liable for all earned premiums on cancelled binders or insurance policies, whether or not such premium has been collected by the Producer.

## IV. Designation of Producer by Policyholder and Ownership of Expirations

A. If a conflict exists as to whether the Producer or another producer of the Company is authorized to represent an existing or prospective policyholder, the policyholder's written Producer of Record designation signed by the policyholder shall be final and binding upon the parties. On wholesale produced business, the policyholder's agent may provide the signed Producer of Record designation to the Company. The Company will not accept a Producer of Record letter within five (5) business days of the policy expiration date.

   1. If the policyholder designates another producer as his/her Producer of Record, the Producer is responsible for earned premiums and the return of unearned commissions, and is entitled to receive earned commissions (including premiums, unearned commissions and commissions on audit and other premiums relating to the policy paid or payable after policy expiration) arising out of "incumbent policies". "Incumbent policies" mean policies produced by the Producer for the policyholder, but do not include new policies or renewals issued upon or after:

      (a) termination of the policy(s), whether by expiration or cancellation; or

      (b) the next subsequent anniversary date of the policy(s),
          whichever first occurs.

B. Producer's records, use and control of expirations shall remain the property and be left in the possession of Producer provided all amounts due Company under this Agreement have been paid or Producer has provided security for the payment which has been accepted by Company. If the amounts due the Company have not been paid, and acceptable security has not been provided, the records, use and control of all expirations of business placed with Company will be vested in Company. Upon written request from Company, Producer shall make all such records and expirations immediately available to Company.

## V.   Claims Against the Policyholders or Company

Both during the term of this Agreement and after termination of this Agreement, Producer shall immediately notify the Company of claims, suits, or losses under the Company's policies, cooperate fully in the Company's investigation, adjustment, settlement, and payment of claims. The Producer will also promptly notify and cooperate with the Company when the Producer receives notice of any other claim or alleged liability that involves or may potentially involve the Company.

## VI. Confidentiality

A. Producer and Company recognize and agree that each party will be provided with confidential information ("Confidential Information") of the other party including technical information, materials, data, reports, programs, documentation, diagrams, ideas, concepts, techniques, processes, inventions, knowledge, know-how, and trade secrets. Each of the parties shall maintain the confidentiality of the Confidential Information of the other party, take steps to minimize the dissemination or copying of such Confidential Information, and use the Confidential Information solely for the purpose of performing its obligations under this Agreement. This Agreement and its various provisions are not Confidential Information.

B. Producer shall not disclose any personally identifiable or private information of the policyholders of Company or any information of Company that is or may be protected pursuant to the McCarran-Ferguson Act, the Gramm-Leach-Bliley Act ("GLBA"), the Financial Privacy Rule and the Safeguards Rule of the GLBA, the Health Insurance Portability and Accountability Act of 1996 (commonly referred to as HIPPA), the Privacy Rule of HIPPA, the Health Information Technology for Economic and Clinical Health Act (commonly referred to as HITECH Act), the Fair and Accurate Credit Transactions Act of 2003 (commonly referred to as FACTA), the Red Flags Rules of FACTA, the Medicare Secondary Payer Act, the Medicare, Medicaid, and SCHIP Extension Act of 2007, and any amendments to any of the foregoing, and/or any other federal, state or local laws, regulations or ordinances governing the privacy of personal information, including but not limited to medical information ("Policyholder Information"). Producer agrees that it shall maintain security procedures and practices appropriate to the nature of the Policyholder Information to protect the Policyholder Information from unauthorized access, destruction, use, modification or disclosure.

C. In the event of any disclosure or loss of Confidential Information, the receiving party shall notify the disclosing party as soon as possible. In the event of any disclosure or loss of Policyholder Information, Producer shall notify Company in writing as soon as possible.

## VII. Changes and Revisions of Agreement

This Agreement may be revised by mutual agreement that is evidenced by a written addendum or amendment signed by the Company and the Producer.

## VIII. Termination of Agreement

Either party may terminate this Agreement, upon written notice to the other and in accordance with the insurance laws and regulations, if any, of the state in which the Producer is domiciled.

## IX. Indemnification

Each party shall indemnify, defend, and hold harmless the other party, its shareholders, officers, directors, and employees from and against any claim, and any and all loss, liability, damages, costs, and expenses, including attorneys' fees, sustained or incurred by such indemnified party, or by any of the indemnifying party's employees to the extent directly based upon or resulting from (1) any act or omission by the indemnifying party and/or its employees giving rise to the claim, loss, liability, damages, costs or expenses or (2) any breach of this Agreement.

The Producer shall be solely responsible for any fines, penalties or damages associated with Producer's improper disclosure of Policyholder Information and shall fully defend, indemnify, and hold harmless the Company for and against any such improper disclosure.

## X. Miscellaneous

A. The Producer will not commit the Company to any expenses or obligations without the prior written permission of the Company.

B. Any provision of this Agreement which conflicts with applicable law or regulation will be amended to the minimum extent necessary in order to comply with such law or regulation.

C. The Company has the right to offset against any money due the Producer under this Agreement and may exercise this right from time to time.

D. The Producer will not represent the Company on an exclusive basis with respect to any policy form, line or class of business.

E. Failure of either party to enforce compliance with any term or condition of this Agreement shall not constitute a waiver of such term or condition. No waiver of any breach or default hereunder shall be valid unless in writing and signed by the party giving such waiver, and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

F. The Producer is an independent contractor, not an employee of the Company, or any of its affiliates, and nothing in this Agreement shall be construed to create an employer/employee relationship between the Company and Producer. Other than with respect to the duties and responsibilities of Producer specifically set forth in this Agreement, Producer does not act in any capacity for the Company and is at all times acting on behalf of the policyholder. Without limitation, Producer acts on behalf of former, current and prospective policyholders with respect to (1) providing advice, recommendations or services concerning the scope, selection, purchase or maintenance of any coverage or the amount of any policy limits; and (2) obtaining from the policyholder and providing to Company accurate and complete information in the application process for any coverage or changes to coverage.

G. Producer shall comply with any and all laws, regulations, agreements or other legal requirements that require Producer to make any disclosure concerning the existence of this Agreement, its terms and conditions, or the compensation Company pays to Producer. Company assumes no responsibility to make such disclosure on behalf of Producer.

H. Producer shall submit to Company all advertising, sales promotion, customer lists, press releases and other publicity material relating to services performed by Producer wherein the name, trademark or service mark of the Company or any affiliated company is mentioned, and Producer agrees not to publish or use such advertising, sales promotion, customer lists, press releases and other publicity material without the express written approval of the Company. The Company may, for any reason or for no reason and at its sole discretion, refuse to permit to use the Company's name, trademark or service mark or those of any affiliated company in Producer's advertising, sales promotion, customer lists, press releases or publicity material. All expenses associated with the marketing of the Company's products are payable by the Producer.

I. Producer shall not assign this Agreement or any benefits or rights under this Agreement without the Company's prior written consent. Producer shall notify the Company in writing of any change in name or address or any sale, transfer, merger or consolidation of all, or substantially all, of the Producer's stock or assets including expirations or renewals, to another person or entity. The Company shall not be obliged to appoint such other person or entity.

J. This Agreement is subject to the laws of the State of New Jersey.

K. This Agreement supersedes all previous agreements, whether written or oral, between the Company and the Producer and shall be effective August 1, 2015 , and shall remain in full force and in effect until terminated as provided herein.

L. The headings in this Agreement are not part of the Agreement and have been inserted for convenience only.

M. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but such counterparts shall together constitute one and the same Agreement. The Company and Producer agree that each may execute this Agreement either by signing and sending an electronic copy of this Agreement with their signature to the other party in PDF or similar file format, or electronically signing this Agreement, and that both methods are acceptable and enforceable. If a party desires to execute this Agreement electronically, they may do so by checking the Electronic Signature And Acceptance box and by typing their name and title in the respective spaces on this Agreement. By doing so, such party hereby consents and agrees that their use of a key pad, mouse, keyboard or other device to accomplish the foregoing constitutes their signature, acceptance, and agreement as if actually signed by them in writing and has the same force and effect as a signature affixed by hand. Further, such party agrees that the lack of a certification authority or other third party verification will not in any way affect the validity or enforceability of their signature or any resulting contract.

N. The following sections of the Agreement survive termination, as applicable: I (other than A.), II, III, IV, V, VI, VII, IX and X.

IN WITNESS WHEREOF, the Producer and the Company have caused this Agreement to be executed.

FOR THE PRODUCER BY:

_Carol A Hopson_
Signature

_President_
Title

_CAROL A. HOPSON_
Print Name

To execute this agreement electronically, check the ELECTRONIC SIGNATURE AND ACCEPTANCE box and type your name and title in the respective spaces directly below.

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____
Name for Electronic Signature

_____
Title

FOR THE COMPANY BY:

_[signature]_
Signature

_Chief Marketing Officer_
Title

_Jorge Echemendia_
Print Name

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____
Name for Electronic Signature

_____
Title



# *Producer - Company Agreement*

### Surety Commission Schedule

Name of the Producer: **C&D Insurance & Bonds, Inc.**

Address of Producer: 1163 Natures Hammock Rd. N., St. Johns, FL 32259

| Line of Business | Rate of Commission |
|---|---|
| **Contract Surety:** | |
| A. First six months from effective date of this Commission Schedule | 35% |
| B. Thereafter | 30% |
| **Commercial Surety:** | |
| A. First six months from effective date of this Commission Schedule | 35% |
| B. Thereafter | 30% |

This Commission Schedule is effective <u>August 1, 2015</u> and supersedes any existing Surety Commission Schedule between the Producer and the Company. This schedule shall not prohibit the negotiation of special commissions on individual policies by mutual agreement of the Producer and the Company.

FOR THE PRODUCER BY:

_____      _____
Signature *(Carol A Hopson)*     Title *(President)*

_____
Print Name *(CAROL A. HOPSON)*

To execute this agreement electronically, check the ELECTRONIC SIGNATURE AND ACCEPTANCE box and type your name and title in the respective spaces directly below.

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____      _____
Name for Electronic Signature     Title


FOR THE COMPANY BY:

_____      _____
Signature     Title *(CHIEF MARKETING OFFICER)*

_____
Print Name *(Joyce Ettemenson)*

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____      _____
Name for Electronic Signature     Title

C&F and Crum & Forster are registered trademarks of United States Fire Insurance Company.

The Crum & Forster Enterprise, which is part of Fairfax Financial Holdings Limited, is comprised of leading and well-established property and casualty business units. The insurance companies within the Enterprise, rated A (Excellent) by A.M. Best Company, are: United States Fire Insurance Company, The North River Insurance Company, Crum and Forster Insurance Company, Crum & Forster Indemnity Company, Crum & Forster Specialty Insurance Company, Seneca Insurance Company, Inc., Seneca Specialty Insurance Company, First Mercury Insurance Company, and American Underwriters Insurance Company.



# Producer – Company Agreement

### SURETY ADDENDUM

## Alter Surety Group, Inc.

Name of the Producer as currently contracted

5979 NW 151 Street, Suite 104, Miami Lakes, FL 33014

Address as it appears on current contract

This Addendum to the Producer-Company Agreement ("Agreement"), as executed between the Producer and the Company, modifies the Agreement only with respect to surety business as follows:

A. The following terms in the Agreement, wherever used, shall be substituted and replaced by the below terms as indicated:

1. The term "policy(ies)", except in reference to "underwriting policies", shall be replaced by the term "surety bond(s)";
2. The term "policyholder" shall be replaced by the term "principal";
3. The term "insured" shall be replaced by the term "bonded principal";
4. The term "policy limits" shall be replaced by the term "single surety bond or aggregate surety bond limits"; and
5. The term "bound" shall be replaced by the term "executed".

B. The following sections of the Agreement shall be further modified as follows:

### I. Duties and Responsibilities of Producer

Paragraph A is amended to replace the first sentence with the following:
"Solicit, receive and send to the Company proposals and applications for surety bonds."

Paragraph B is amended to include the following additional language:
"For surety bonds the commission rate is specified in the Schedule of Commissions contained herein. The rate specified in the Schedule of Commissions will prevail except in cases where the Company gives the producer notice to the contrary, or where a lesser rate is prescribed by regulations or law. The Company reserves the right to set the rate of commission on any new form of bonds, issued by the producer on behalf of the Company, subsequent to the execution of this agreement. The Company may make adjustments to the Producer's commission rate for any additional countersigning or executing fees that the Company may incur on account of any business produced by the Producer, and all expenses that the

Company may incur in the collection of premiums that remain unpaid beyond the period allowed the Producer for collection."

The following paragraphs have been added:

I. Abide by all conditions and limitations placed upon the Producer with respect to the use of Powers of Attorney, executed by the Company authorizing the Producer and other persons named therein to execute bonds, obligations or other undertakings on behalf of the Company, and the Producer agrees to be responsible for any violations thereof.

J. Abide by all conditions and limitations placed upon the Producer with respect to the issuance of account specific Letters of Authority, executed by the Company authorizing the Producer and other persons named therein to approve bonds, obligations or other undertakings on behalf of the Company, and the Producer agrees to be responsible for any violations thereof.

K. Agrees that neither the Producer nor any other person named on the Powers of Attorney or account specific Letter of Authority will make, alter or amend any surety bond or other undertaking without the express written consent of the Company. The producer shall not extend the time for payment of premiums nor execute any consent to any contracts or other documents nor incur or admit any liability on behalf of the Company without express consent of the Company.

## II. Premium Accounting

Paragraph J is amended to replace the first sentence with the following:
"Subject to Paragraph L. below, Producer agrees to pay the Company all premiums, including any endorsement, additional and renewal premiums, written or earned, on bonds executed under this Agreement, whether or not actually collected."

This Addendum shall be effective **August 1, 2015**.

IN WITNESS WHEREOF, the Producer and the Company have caused this Agreement to be executed.

FOR THE PRODUCER BY:

_[signature]_
Signature

_President_
Title

_CAROL A. HOPSON_
Print Name

_____
Date

To execute this agreement electronically, check the ELECTRONIC SIGNATURE AND ACCEPTANCE box and type your name and title in the respective spaces directly below.

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____
Name for Electronic Signature

_____
Title

FOR THE COMPANY BY:

_[signature]_
Signature

_Chief Marketing Officer_
Title

_Jorge E. Hemenway_
Print Name

_12/3/15_
Date

**ELECTRONIC SIGNATURE AND ACCEPTANCE** ☐

_____
Name for Electronic Signature

_____
Title

C&F and Crum & Forster are registered trademarks of United States Fire Insurance Company.

The Crum & Forster Enterprise, which is part of Fairfax Financial Holdings Limited, is comprised of leading and well-established property and casualty business units. The insurance companies within the Enterprise, rated A (Excellent) by A.M. Best Company, are: United States Fire Insurance Company, The North River Insurance Company, Crum and Forster Insurance Company, Crum & Forster Indemnity Company, Crum & Forster Specialty Insurance Company, Seneca Insurance Company, Inc., Seneca Specialty Insurance Company, First Mercury Insurance Company, and American Underwriters Insurance Company.